**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ROGER GIFFORD,                                          No. 2:11-cv-2484-KJM-CMK

          Plaintiff,

    vs.                                          <u>FINDINGS AND RECOMMENDATION</u>

SISKIYOU COUNTY SHERIFF, et al.,

          Defendants.

_____/

       Plaintiff, proceeding in propria persona and in forma pauperis, brings this civil action.  Pending before the court are defendants' motions to dismiss (Docs. 14, 50).  The hearing on the first motion to dismiss was taken off calendar and submitted on the records and briefs pursuant to Local Rule 230(c), as no opposition to the motion was filed.  A hearing on the second motion to dismiss was held on October 10, 2015, before the undersigned in Redding, California.  Deputy Attorney General Alberto Gonzalez appeared telephonically; plaintiff appeared in pro se.  Attorney Philip B. Price also appeared in person.

## I.  BACKGROUND

       Plaintiff originally filed this action in September 2011.  The complaint was dismissed with leave to amend, and an amended complaint was filed January 20, 2012 (Doc. 7).  The amended complaint named both California Highway Patrol officers (State defendants) and Siskiyou County Sheriff deputies (County defendants).  Service on the individual officers was

1

authorized and completed.  The County defendants filed a motion to dismiss on August 24, 2012.

Prior to the court ruling on the motion to dismiss, the State defendants (by special appearance)

and plaintiff entered into a stipulation to stay the proceedings (joined by the County defendants),

which was granted, based on an underlying state court proceeding related to the claims raised in

this case.  In April 2015, the stay was lifted as the underlying state proceedings concluded.  A

status conference was held on May 27, 2015.  The County defendants were provided an

opportunity to file a renewed motion to dismiss, which they chose not to do, relying instead on

the pending motion to dismiss.  Plaintiff had previously failed to file a timely opposition to the

County defendants' motion; however, he did file a late opposition which the undersigned has

read and considered.  The State defendants then filed their pending motion to dismiss, to which

plaintiff filed a timely opposition, and the matter was heard by the court on October 21, 2015.

## II.  MOTIONS TO DISMISS

The State and County defendants each filed separate motions to dismiss.  The

underlying issue in the motions to dismiss are essentially the same, and the same analysis is

applicable to both.  The undersigned will therefore address the motions together.

The defendants bring their motions to dismiss on the grounds that plaintiff's

complaint fails to state a claim upon which relief can be granted, the court lacks jurisdiction over

the pendent state law claims, the officers are entitled to qualified immunity, there was no

constitutional violation to support plaintiff's claims, plaintiff failed to comply with the California

Government Claims Act, and other claims are not well plead.  The defendants also argue[1] the

state law claims should be stricken, and in the alternative, for a more definite statement.  The

later of these arguments are unnecessary based on the discussion below.

In opposition, plaintiff argues that he intends to prove during trial that the

---

[1]    The defendants make other irrelevant arguments regarding the dismissal of potential claims which were not authorized.  The only defendants service was found to be appropriate for were the individual officers identified.  The court found no claims sufficiently plead against the agencies or any other potential defendant.

1  defendants violated his Constitutional rights.  As to the qualified immunity, plaintiff argues that

2  he is an approved Compassionate Use Act (CUA) user, an argument that does not address the

3  application of qualified immunity.  He also argues that his property was ordered to be returned by

4  the state court, but it has not been returned.

5  **A.  STANDARDS**

6  In considering a motion to dismiss, the court must accept all allegations of

7  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

8  court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

9  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

10  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

11  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

12  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

13  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

14  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

15  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  "Although a pro se litigant ... may be

16  entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must

17  meet some minimum threshold in providing a defendant with notice of what it is that it allegedly

18  did wrong."  Brazil v. United States Dept of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

19  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

20  the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

21  and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

22  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

23  failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

24  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

25  raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain

26  "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has

3

1   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2   reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

3   1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

4   than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

5   at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

6   it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

7   (quoting Twombly, 550 U.S. at 557).

8          In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

9   outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

10  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1)

11  documents whose contents are alleged in or attached to the complaint and whose authenticity no

12  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

13  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

14  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

15  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

16  1994).

17         Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

18  amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

19  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

20         **B.  DISCUSSION**

21         The defendants argue they are entitled to qualified immunity for any claim of

22  violation of the Fourth Amendment. There appear to be two such claims in the complaint. The

23  first claim involves the breaking into and searching of plaintiff's vehicle; the second involves the

24  search warrant obtained and executed as to plaintiff's house.

25         Government officials enjoy qualified immunity from civil damages unless their

26  conduct violates "clearly established statutory or constitutional rights of which a reasonable

4

1  person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general,

2  qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

3  law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified

4  immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting

5  the injury, the facts alleged show the defendant's conduct violated a constitutional right. See

6  Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask

7  whether the right was clearly established. See id. This inquiry "must be undertaken in light of

8  the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the

9  official is alleged to have violated must have been 'clearly established' in a more particularized,

10  and hence more relevant, sense: The contours of the right must be sufficiently clear that a

11  reasonable official would understand that what he is doing violates that right." Id. at 202

12  (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable

13  officer in similar circumstances would have thought his conduct violated the alleged right. See

14  id. at 205.

15          When identifying the right allegedly violated, the court must define the right more

16  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

17  factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667

18  (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be

19  sufficiently clear that a reasonable official would understand [that] what [the official] is doing

20  violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the

21  court concludes that a right was clearly established, an officer is not entitled to qualified

22  immunity because a reasonably competent public official is charged with knowing the law

23  governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even

24  if the plaintiff has alleged a violation of a clearly established right, the government official is

25  entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his .

26  . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir.

1  2001); see also Saucier, 533 U.S. at 205.

2         The first factors in the qualified immunity analysis involve purely legal questions.

3  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

4  determination based on a prior factual finding as to the reasonableness of the government

5  official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

6  has discretion to determine which of the Saucier factors to analyze first.  See Pearson v.

7  Callahan, 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence

8  in the light most favorable to plaintiff and resolve all material factual disputes in favor of

9  plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

10        Here, plaintiff's allegations, which are inartfully plead, indicate his contention is

11  that the defendants violated his Fourth Amendment rights by conducting a warrantless search of

12  his vehicle when it was legally parked on the side of the on-ramp to I-5.  He acknowledges he

13  had marijuana in the vehicle, but contends that he was lawfully in possession thereof.  He claims

14  the CHP officers unlawfully entered his vehicle and seized his property (the marijuana).  He

15  further alleges the CHP officers then provided inaccurate statements to the Siskiyou County

16  Sheriff in order to obtain a search warrant for his home, again in violation of his Fourth

17  Amendment rights.

18        The defendants request the court take judicial notice of the Siskiyou County Court

19  proceedings, in which plaintiff plead no contest to charges of violating California Health and

20  Safety Code section 11357(a), unauthorized possession of concentrated cannabis.  The court may

21  take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.

22  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).  Thus, this court may take

23  judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560,

24  563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir.

25  1967).

26        While not completely clear from the complaint, it does appear from the statements

6

1  in the complaint and in plaintiff's opposition to the motion, that he was did in fact have

2  marijuana in the vehicle which was parked on the on-ramp.  This is further supported by

3  plaintiff's no contest plea to possession of concentrated cannabis.  As to the Fourth Amendment

4  violation stemming from the warrantless search of plaintiff's vehicle, based on the allegations in

5  the complaint and the no contest plea entered in Siskiyou County, there does not appear to have

6  been a Fourth Amendment violation at all.

7          The Fourth Amendment protects the "right of the people to be
        secure in their persons, houses, papers, and effects, against
8        unreasonable searches and seizures."  This fundamental right is
        preserved by a requirement that searches be conducted pursuant to
9        a warrant issued by an independent judicial officer.  There are, of
        course, exceptions to the general rule that a warrant must be
10       secured before a search is undertaken; one is the so-called
        "automobile exception" at issue in this case.  This exception to the
11       warrant requirement was first set forth by the Court 60 years ago in
        Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543
12       (1925).  There, the Court recognized that the privacy interests in an
        automobile are constitutionally protected; however, it held that the
13       ready mobility of the automobile justifies a lesser degree of
        protection of those interests.

14

15  California v. Carney, 471 U.S. 386, 390 (1985).

16          The automobile exception is based on the mobility of a vehicle, as well as the

17  lesser expectation of privacy in a vehicle than in a dwelling.  See id. at 391.

18          When a vehicle is being used on the highways, or if it is readily
        capable of such use and is found stationary in a place not regularly
19       used for residential purposes-temporary or otherwise-the two
        justifications for the vehicle exception come into play.  First, the
20       vehicle is obviously readily mobile by the turn of an ignition key, if
        not actually moving.  Second, there is a reduced expectation of
21       privacy stemming from its use as a licensed motor vehicle subject
        to a range of police regulation inapplicable to a fixed dwelling.  At
22       least in these circumstances, the overriding societal interests in
        effective law enforcement justify an immediate search before the
23       vehicle and its occupants become unavailable.

24  Id. at 392-92.

25          Thus, where plaintiff's vehicle is parked on a freeway on-ramp, and probable

26  cause exists, a warrantless search may be conducted without violating the Fourth Amendment.

The probable cause presumably present in this circumstances was the marijuana in the vehicle. The presence of marijuana is not contested by plaintiff, only whether that marijuana was legally possessed.  Regardless of whether or not plaintiff was legally in possession of the marijuana, the possession thereof is not contested as evidenced by the plea of no contest.  As the defendants contend, when there is marijuana present in a parked vehicle, law enforcement has no way of knowing whether the owner of the vehicle is legally permitted to have possession thereof, or whether the marijuana is in transport for illegal purposes.  For qualified immunity purposes, it is clear that a law enforcement officer in that situation may reasonably, even if mistakenly, conclude probable cause is present to conduct a warrantless search of the vehicle.  As there was probable cause for searching the vehicle, based on the presence of the marijuana, arresting plaintiff based thereon similarly did not violate the Fourth Amendment as the officers had probable cause for the arrest.  Therefore, even if the officers violated plaintiff's Fourth Amendment rights by searching the vehicle without a warrant and arresting plaintiff, they are entitled to qualified immunity under the reasonable but mistaken violation exception.

Next, as to plaintiff's claims that the defendants violated his Fourth Amendment rights by giving false statements to obtain a search warrant for his home, this claim is not exactly clear from the complaint.  The complaint does not explain what false statements were given.  At the hearing on the motion, plaintiff indicated the false statements included the officer's opinions as to what the marijuana was (whether it was for sale) and who drove the vehicle.  None of those statements appear to call into question the veracity of the warrant.  However, based on the facts alleged in the complaint, and the no contest plea plaintiff entered into in Siskiyou County Courts, it would appear that the search warrant of plaintiff's house was obtained after his vehicle was searched and the marijuana found.  Based on the marijuana in his vehicle, the officers obtained the search warrant for the house.  Plaintiff contends that his possession of the marijuana was legal under Proposition 215, as he had a recommendation from his doctor.  However, as the defendants argue, the Compassionate Use Act, California Health & Safety Code § 11362.5, is a

1   defense to prosecution.  It is not a bar to law enforcement investigation or a protection against

2   arrest.  The California Supreme Court has made it clear that "except as authorized or provided by

3   law, it is a crime to possess marijuana (§ 11357), to cultivate, harvest, dry, or process it (§

4   11358), to possess it for sale (§ 11359), to transport, import, sell, administer, or furnish it (§

5   11360), or to give it all away (*ibid.*).  People v. Dowel, 161 Cal.Rptr.3d 103, 108 (Cal. 2013).

6   The CUA provides an affirmative defense to the crimes of possession and cultivating marijuana,

7   not immunity.  See id.

8           Accordingly, to the extent plaintiff contends that his CUA standing somehow

9   barred law enforcement from investigating his possession and transporting of the marijuana, that

10  argument fails.  The discovery of marijuana in plaintiff's vehicle provided support for the

11  officers to obtain a warrant to continue their investigation into plaintiff's possession of

12  marijuana.  To the extent plaintiff argues that the defendants used false statement to obtain the

13  search warrant, that conclusory claim cannot be sustained based on the other facts alleged and

14  established.  Once a search warrant was obtained based on the discovery of the marijuana in

15  plaintiff's vehicle, the officers would be entitled to qualified immunity as to the reasonable

16  execution of that search warrant.  There is nothing in the complaint to indicate that the officers'

17  execution of the search warrant was somehow erroneous, plaintiff only challenges the issuance of

18  the warrant.

19          To the extent plaintiff attempts to make a claim for destruction of his property

20  under Fourth Amendment, such a claim cannot stand. Plaintiff appears to be claiming that the

21  defendant officers destroyed his personal property, including such items as a gun safe, a WWII

22  knife, and records, indicating a due process violation.  There is no indication that plaintiff claims

23  these items were destroyed pursuant to some policy or procedure.  In fact, plaintiff indicates the

24  officers ignored policy.  Thus, it appears that these claims are based on the officer's random and

25  unauthorized acts.  Such an allegation fails to state  a claim for due process violation under §

26  1983 where state post-depravation remedies are available through the civil tort law.  See

1    Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).

2    A state's post-deprivation remedy may be adequate even though it does not provide relief

3    identical to that available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  See also King v.

4    Massarweh, 782 F.2d 825, 827 (9th Cir. 1986).

5            As to the state law claims, plaintiff alleges false arrest, conversion, unlawful

6    search and seizure, and freedom of speech.  To the extent these state law claims are viable, the

7    court should decline jurisdiction as no federal claims will remain.  However, none of the claims

8    appear viable.  The false arrest claim is belied by the no contest plea entered into in state court.

9    The claim for unlawful search and seizure, as discussed above, the officers would be entitled to

10   qualified immunity.  His claims for conversion is unclear, but appears to be a claim for

11   conspiracy between the two agency officers to seizure plaintiff's marijuana.  It therefore appears

12   to be related to his search and seizure, and fails as a matter of law as the officers are entitled to

13   qualified immunity as to the search and seizure.  His freedom of speech claim appears to be

14   similar to a retaliation claim, where he indicates he is being targeted based on his medical

15   marijuana use.  Defendants also contend that as to any property destruction claim, plaintiff failed

16   to allege compliance with the California Government Claims Act.

17                          **III.  MOTION FOR SANCTIONS**

18           The County defendants also filed a motion for sanctions based on plaintiff filing

19   an unauthorized late opposition. Defendants argue plaintiff failed to follow the local rules and

20   court orders in filing his late opposition, and are requesting sanctions for the time required to

21   prepare and file a response.

22           The undersigned agrees with the defendant that pro se plaintiffs are required to

23   follow the Federal Rules of Civil Procedure as well as all Local Rules.  See United States v.

24   Merrill, 746 F.2d 458, 465 (9th Cir. 1984) (overruled on other grounds).  Rule 11 sanctions

25   requires a showing of objectively unreasonable conduct.  Business Guides, Inc. v. Chromatic

26   Commc'n Enter., Inc., 498 U.S. 533, 551 (1991).  Invocation of a federal court's inherent power

to sanction requires a finding of bad faith.  See Chambers V. Nasco, Inc., 501 U.S. 32, 50 (1991).
The undersigned does not find plaintiff's conduct to be so egregious as to warrant the awarding
of sanctions.  The undersigned further notes that defendants failed to properly notice the motion
for hearing, in that the motion was not filed twenty-eight (28) days prior to the hearing.  Local
Rule 230(b).

### IV.  CONCLUSION

Based on the facts alleged, and the discussion above, plaintiff's complaint fails to
state a claim and the defendants are entitled to qualified immunity.  As to any plausible state law
claims, the court should decline jurisdiction.

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motions to dismiss (Docs. 14, 50) be granted;

2.      Plaintiff's complaint be dismissed without leave to amend;

3.      Defendants' motion for sanctions (Doc. 65) be denied; and

4.      The Clerk fo the Court be directed to close this case.

These findings and recommendations are submitted to the United States District
Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days
after being served with these findings and recommendations, any party may file written
objections with the court.  Responses to objections shall be filed within 14 days after service of
objections.  Failure to file objections within the specified time may waive the right to appeal.
See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 23, 2016

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE